UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
─────────────────────────────────X
KARON FOOTMAN,

               Plaintiff,                    **MEMORANDUM & ORDER**

   -against-                                   23-cv-1537 (NRM) (LGD)

DALE DOUGHERTY, JEFF FOSTER,
JANE DOE Correctional Officer, JOHN
DOE (Exam Doctor Winslow Medical
Center), JOHN DOE (PBMC Medical
Center ER Doctor), ERROL D. TOULON,

               Defendants.
─────────────────────────────────X

NINA R. MORRISON, United States District Judge:

    Plaintiff Karon Footman, proceeding *pro se,* commenced this Section 1983 action against corrections officers and medical staff related to what he alleges was unconstitutional conduct during two medical appointments while he was incarcerated as a pretrial detainee in Suffolk County. Individual Defendants Suffolk County Deputy Sheriffs Dale Dougherty and Jeff Foster filed a motion to dismiss for failure to state a claim upon which relief can be granted. For the reasons set forth below, Defendants' motion to dismiss is denied without prejudice to renew as a motion for summary judgment.

## BACKGROUND

### I. Plaintiff's Allegations

    For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the Second Amended Complaint, ECF No. 33 ("SAC"), and draws all reasonable inferences in the *pro se* Plaintiff's favor.

1

On December 7, 2022,[1] Plaintiff — who was at that time incarcerated at Suffolk County Correctional Facility — slipped and fell after his floor had been flooded for two days. SAC at 2–4.[2] He had to walk to the medical unit "in extensive pain from his head, neck, back, [and] knee injuries." *Id.* at 4. On December 9, he had a follow-up appointment at Winslow Medical Center, where a doctor whom he has yet to identify, but who is referred to in the complaint as "Exam Room Doctor John Doe," examined his back. Exam Room Dr. Doe then touched plaintiff's "lower buttocks with index and middle finger and tried to penetrate [his] anus." *Id.*[3] He told the doctor "ouch" and the doctor stopped and left. *Id.* Plaintiff then went to another room where he told Defendants Dougherty and Foster — who were the transit deputies that transported him — what happened, and they laughed at him. *Id.* When Plaintiff got back to the jail, he "wrote a request to and retrieved grievance and grieved deputies." *Id.*

On December 30, 2022, Plaintiff suffered from stomach pain and had blood in his stool. *Id.* He asked for medical assistance, but "nothing happened." *Id.* The next day, he was in pain while trying to pass a stool and fell off the toilet. *Id.* He was transported to the hospital "for significant blood loss" and learned that the medication

---

[1] Although the SAC does not have a year, Plaintiff's initial complaint specified that the incidents occurred in 2022 (Compl. 3, ECF No. 1) and at a conference with Magistrate Judge Dunst, Plaintiff confirmed on the record that the events took place in December 2022. Minute Entry dated October 17, 2023. ECF No. 19.

[2] All page references use ECF pagination except where noted.

[3] In the description of his claims, Plaintiff also says that Exam Room Doctor Doe "groped [Plaintiff's] anus with his two fingers forcefully." *Id.* at 5.

2

that had previously been prescribed to him by a doctor in the ER ("ER Doctor John Doe") following his December 7 injuries caused him extensive blood loss and required stents in his intestines to stop the "massive blood loss." *Id.* at 4–5.

## II. Procedural History

On May 19, 2023, this Court, under *Valentin v. Dinkins*, directed the Suffolk County Attorney (the "County"), "to ascertain the full names of (1) the John Doe Transit Officers who transported Plaintiff to and from Winslow Medical Center on or about December 9, 2022 and (2) the full names of the medical personnel employed by the County . . . who treated Plaintiff at Winslow Medical Center." ECF No. 11.[4]

In a letter filed on June 28, 2023, the County informed the Court that it needed a HIPAA release from Plaintiff for each facility to gain access to Plaintiff's medical records and that without the forms, it would be "unable . . . to identify the individuals who interacted with Plaintiff during the dates and times alleged in the Amended Complaint." Letter dated June 28, 2023, ECF No. 13. On August 3, 2023, Magistrate Judge Dunst held a telephonic conference and directed the County "to review the Suffolk County Correctional Center's records for documents concerning any transport of Plaintiff to or from any medical facility in December 2022." Minute Entry dated

---

[4] In *Valentin*, the Second Circuit underscored that "appellate courts have found error in a trial court's refusal to assist a *pro se* plaintiff in identifying a defendant," especially "where the plaintiff is incarcerated, and is thus unable to carry out a full pre-trial investigation." 121 F.3d 72, 75 (2d Cir. 1997) (reversing dismissal of pro se incarcerated litigant's case and remanding with guidance for district court to conduct "further inquiry into the identity" of defendant police officer).

3

August 3, 2023. ECF No. 15.[5]  In a letter filed on September 13, 2023, the County reported that Suffolk County Correctional Center's records — obtained without HIPAA releases — demonstrated that: on December 7, 2022, Plaintiff was at Peconic Bay Medical Center; on December 14, 2022, he was at Peconic Bay Medical Center Orthopedic; and on December 31, 2022, he was at Peconic Bay Medical Center, where he was admitted and stayed until January 6, 2023.  ECF No. 18.

On January 12, 2024, the County advised the Court that Plaintiff was transported by Deputy Sheriffs Doherty and Foster on December 14, 2022, and that it was "attempting to acquire the first names of these individuals," and noted that the documents it received (without Plaintiff's HIPAA releases) did not list their first names.  Letter dated January 12, 2024.  ECF No. 26.  The officers' first names were identified at a telephonic conference that Judge Dunst held on February 7, 2024.  *See* Minute Entry dated February 7, 2024.  ECF No. 29.  On March 4, 2024, Plaintiff then filed his Second Amended Complaint, identifying the Sheriffs but leaving the doctors as John Does.  ECF No. 33, at 1–3.

On April 30, 2024, Defendants moved to stay discovery in anticipation of their motion to dismiss.  ECF No. 37.  Judge Dunst denied the request and entered a discovery schedule.  Minute Entry dated June 18, 2024, ECF No. 45.  Under the discovery schedule, fact discovery closed on October 31, 2024, and dispositive motions were due on February 28, 2025.  *Id.*

---

[5] Judge Dunst also directed Plaintiff "to send a letter to the Court if he obtains records concerning any instance in which he was transported to or from any medical facility in December 2022." *Id.*

4

Defendants filed the instant motion on August 19, 2024 (ECF No. 49), and then filed a letter on October 15, 2024, in which they requested that the Court dismiss the case for failure to prosecute because Plaintiff did not respond to the motion to dismiss. ECF No. 50, at 1–2. After the Court directed Plaintiff to respond, Plaintiff — who is still incarcerated, and at a different facility — filed a letter on December 2, 2024 (dated November 17, 2024), in which he informed the Court that he was not receiving his mail in a timely manner and asked the Court to "proceed with his legal complaint." ECF No. 54, at 3. He also wrote that the "HIPAA records should show the parties involved." *Id.* at 1.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Courts are to read a *pro se* litigant's papers 'liberally' and 'interpret them to raise the strongest argument that they suggest.'" *Vann v. Wolfe-Friedman*, No. 23-CV-0236 (NSR), 2025 WL 35058, at *3 (S.D.N.Y. Jan. 6, 2025) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 791 (2d Cir. 1994)). "This admonition applies with particular force when a plaintiff's civil rights are at issue." *Canady v. Correct Care Sols.*, No. 15-CV-4893 (KMK), 2017 WL 4280552, at *9 (S.D.N.Y. Sept. 25, 2017) (internal quotation marks omitted); *see also McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004) ("[W]hen the plaintiff proceeds *pro se,* as in this case, a court is obliged to

construe his pleadings liberally, particularly when they allege civil rights violations.").

## DISCUSSION

Defendants move to dismiss on the ground that Plaintiff failed to exhaust all administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). They also argue that Plaintiff has failed to allege personal involvement on the part of the individually named and identified Defendants. The Court addresses each argument in turn.

### I. PLRA

Under the Prison Litigation Reform Act, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "'Exhaustion is "mandatory" and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,"' or allege . . . the denial of adequate medical care or some other wrong." *Colson v. Mingo*, No. 18-CV-2765 (JGLC), 2024 WL 1018582, at *7 (S.D.N.Y. Mar. 8, 2024) (quoting *Hernandez v. Coffey*, 582 F.3d 303, 305 (2d Cir. 2009)). "To exhaust administrative remedies under the PLRA, an incarcerated individual must 'complete the administrative review process in accordance with the applicable procedural rules — rules that are defined not by the PLRA, but by the prison grievance process itself.'" *Id.* (quoting *Jones v. Bock*, 549 U.S. 199, 218 (2007)).

Defendants argue that Plaintiff has failed to allege that he fully exhausted his administrative remedies in compliance with the PLRA prior to filing suit because, while Plaintiff alleges that after he "left the appointment to go back to the jail, wrote a request to and retrieved grievance and grieved deputies" (*see* SAC, at 4), "he does not allege specifically when a grievance was filed, nor what the outcome of such grievance procedure was, or if he fully exhausted his administrative remedies by appealing any unfavorable outcome of such grievance." Def. Mot. to Dismiss ("Def. Mot.") 9, ECF No. 49-2. However, "[f]ailure to exhaust administrative remedies is an affirmative defense under the PLRA, not a pleading requirement." *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016). "Accordingly, 'inmates are not required to specially plead or demonstrate exhaustion in their complaints.'" *Id.* (quoting *Jones*, 549 U.S. at 216).

A district court may still dismiss a plaintiff's complaint for failure to exhaust administrative remedies "if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement." *Id.* But here, dismissal is inappropriate because Plaintiff has clearly alleged that he *did* file some sort of grievance about the alleged misconduct immediately after the events at issue occurred. *See* SAC, at 4. Nor is it clear from the face of the complaint that, even if plaintiff did not fully exhaust his administrative remedies after filing his initial grievance, he did not have grounds that would excuse his failure to do so. *See Hubbs v. Suffolk Cnty. Sherriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015) (noting that in some circumstances the PLRA's exhaustion requirement may not preclude a plaintiff's

7

claims "if the plaintiff can demonstrate that other factors — for example, threats from correction officers — rendered a nominally available procedure unavailable as a matter of fact"). Thus, because Defendants have not demonstrated that it is clear from the SAC that Plaintiff has not met the PLRA requirements, Defendants are not entitled to dismissal under Rule 12(b)(6). *See, e.g.*, *Rodriguez v. Cohall*, No. 21-CV-1810 (JGK), 2022 WL 1228411, at *4 (S.D.N.Y. Apr. 26, 2022) (denying defendants' motion to dismiss for failure to comply with PLRA's exhaustion requirements where "defendants' entitlement to a failure to exhaust administrative remedies affirmative defense [wa]s not clear from the face of the plaintiff's complaint").

## II. Personal Involvement and Identities of John Doe Doctors

Section 1983 provides that "[e]very person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. "Section 1983 'is not itself the source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes it describes.'" *Ford v. Aramark*, No. 18-CV-2696 (NSR), 2020 WL 377882, at *5 (S.D.N.Y. Jan. 23, 2020) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). "To state a claim under Section 1983, a plaintiff must allege (1) the challenged conduct was attributable to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Id.* (internal quotation

8

marks omitted). Accordingly, "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010).[6]

Defendants argue that "[w]hile Plaintiff appears to allege he is bringing suit against all named defendants for physical and emotional injuries caused by John Doe Doctor at Winslow Medical Center and PBMC ER Doctor for internal bleeding, he fails to factually plead the personal involvement of Defendants Dale Dougherty and Jeff Foster in any constitutional violation." Def. Mot. at 7. However, even though discovery is now closed, the John Doe doctors have not been identified. Thus, it is premature to dismiss the identified Defendants when the revelation of the doctors' identities could reveal personal involvement on the part of other defendants.

Almost three decades ago, the Second Circuit — recognizing how difficult it is for incarcerated *pro se* litigants to identity defendants in their lawsuits — underscored the responsibility of district courts to help incarcerated *pro se* litigants identify unknown defendants. *Valentin*, 121 F.3d 72, 75–76 (2d Cir. 1997). In the instant case, the County has stated that it cannot determine the names of the doctors who treated Plaintiff until he signs multiple HIPAA forms. *See* ECF No. 13. However,

---

[6] Although the Constitution regulates only the conduct of government actors and not that of private parties, *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002), if a private actor was a willful participant in joint activity with the State or its agents, or received significant encouragement from the State for the challenged activity, they may be considered to be acting under color of state law for the purpose of Section 1983. *See Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295–296 (2001) ("[S]tate action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).

9

it is not clear from the record presently before the Court whether Plaintiff was ever given the opportunity to sign the required forms. Moreover, in his most recent letter, Plaintiff wrote that the "HIPAA records should show the parties involved" — which might be read to indicate that Plaintiff believed he had provided Defendants with all completed forms as requested. Letter filed December 2, 2024, ECF No. 54, at 1.

Accordingly, the Court directs the County to send (or resend) Plaintiff HIPAA forms and a pre-stamped return envelope for records and information held by the facilities it identified in its letter filed on September 13, 2023 (ECF No. 18). The Court further directs Plaintiff to sign and mail back the HIPAA forms to the County within 15 days of receipt, unless Plaintiff cites extenuating circumstances that require additional time for signature and mailing. The County should then take any further steps that are necessary to identify the John Doe doctors.

Once the County attempts to identify the John Doe doctors — or informs the Court that Plaintiff has not signed the HIPPA forms within the allotted time period — Defendants may renew their arguments regarding personal involvement on a motion for a summary judgment. If the doctors are identified, Plaintiff may file an amended complaint within 30 days of receiving the names, and the parties shall confer with Judge Dunst as to whether discovery should be reopened. The County shall file a status letter to this Court and Magistrate Judge Dunst within 45 days of this Memorandum and Order.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is denied in its entirety without prejudice to renew as a motion for summary judgment. The Clerk of Court is respectfully directed to mail a copy of this Memorandum and Order to *pro se* Plaintiff. Plaintiff is reminded that if he is transferred to a different facility, he must update the Court with his new address.

SO ORDERED.

*/s/ Nina R. Morrison*
NINA R. MORRISON
United States District Judge

Dated: March 30, 2025
    Brooklyn, New York

11